Katherine C. Chamberlain, WSBA No. 40014
Nathaniel Flack, WSBA No. 58582
MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104-1745
206-622-1604

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

KODIE HARTIN,

    Plaintiff,

v.

AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE, INC.,

    Defendant.

No.

COMPLAINT

DEMAND FOR JURY TRIAL

## I.    INTRODUCTION

1.1    Plaintiff Kodie Hartin brings this pregnancy discrimination action against Defendant American Medical Response Ambulance Service, Inc. ("AMR") for AMR's violations of Title VII of the Civil Rights Act of 1964 as amended by the Pregnancy Discrimination Act of 1978, the Americans with Disabilities Act, the Washington Law Against Discrimination, the Washington Healthy Starts Act, and the Washington Paid Family and Medical Leave Act.

1.2    The facts of Plaintiff's primary claim are simple: AMR fired Ms. Hartin because she was absent from work for reasons it knew were related to her

COMPLAINT - 1

ph222201

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

pregnancy.

1.3    Ms. Hartin performed her job well. AMR encouraged her to seek a promotion within her first year of employment. But when Ms. Hartin told AMR that she was pregnant and would need intermittent time off as an accommodation, and then missed work for that reason, AMR fired her. In doing so, AMR violated federal and state law.

1.4    AMR has a troubling history of unlawful pregnancy discrimination. The company is currently subject to a 30-month Consent Decree in this very court, which: enjoins AMR from engaging in discrimination based on pregnancy or pregnancy-related conditions; requires AMR to revise, develop, and implement policies and procedures relating to pregnancy and accommodation; and requires AMR to train its management accordingly, among other requirements. *See Equal Employment Opportunity Commission v. American Medical Response Ambulance Service, Inc.*, Case No. 2:19-CV-258-RMP, ECF No. 26 (dated December 18, 2020). AMR has failed to comply with its obligations under federal law and the ongoing Consent Decree.

1.5    Ms. Hartin seeks vindication of her rights as a pregnant woman and working mother, compensatory and punitive damages against AMR, as well as declaratory and injunctive relief. The law is clear and the facts are straightforward. AMR must permanently desist from unlawful pregnancy discrimination.

## II.    JURISDICTION AND VENUE

2.1    This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over

COMPLAINT - 2

ph222201

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

Plaintiff's state law claims.

2.2. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in the Eastern District of Washington.

### III.  PARTIES

3.1  Plaintiff Ms. Hartin is a woman residing and working in Spokane, Washington.

3.2  Defendant American Medical Response Ambulance Service, Inc. ("AMR") is a foreign corporation doing business in the State of Washington, including in Spokane, Washington.

### IV.  BACKGROUND

4.1  Defendant AMR is a medical transportation company providing ambulances services and patient care services to private and public sector clients. AMR or its parent company operates nationwide and describes itself as "the leading provider of emergency and non-emergency ambulance services in the United States." AMR owns and operates ambulances as well as dispatch centers, and employees Emergency Medical Technicians, paramedics, dispatchers, and other professionals.

4.2  AMR employees thousands of people and promises its employees "equal employment opportunities for all" and assures the public that it does not "discriminate on the basis of …sex."

4.3  AMR has a well-documented history of unlawful mistreatment of pregnant employees.

4.4  On July 25, 2019, the Equal Employment Opportunity Commission

COMPLAINT - 3

ph222201

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

filed a complaint against AMR in this Court. The EEOC's lawsuit alleged that AMR had engaged in unlawful employment practices in Spokane, Washington, including unlawful mistreatment of a pregnant employee and failure to accommodate her pregnancy-related work restrictions including a request to limit the number of hours she worked per shift. The complaint further alleged that AMR denied the pregnant employee's request and required her to take continuous leave from work instead. The EEOC Complaint alleged violation of Title VII, 42 U.S.C. § 2000e-(2)(a) and sought a permanent injunction, as well as damages and other remedies.

4.5  On December 18, 2020, this Court entered a Consent Decree against AMR. The Consent Decree enjoins AMR and its officers, agents, managers, supervisors, and human resources staff, from engaging in unlawful pregnancy discrimination, and requires AMR to implement policies and procedures to comply with the law. The Consent Decree requires AMR to create and implement anti-discrimination policies relating to pregnancy and reasonable accommodations for pregnancy-related work restrictions; to inform employees of their rights; to establish internal complaint procedures with strict response times, and take prompt corrective action in response to discriminatory actions against pregnant employees; implement EEO training on specific topics and with specific components; have accountability policies for leadership; and engage in regular reporting to the EEOC.

4.6    The Consent Decree against AMR will be in place until June 2023, with the Court retaining enforcement jurisdiction throughout, subject to additional

COMPLAINT - 4

ph222201

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1  extension for any violations of the decree.

2      4.7    Unfortunately, as set forth below, AMR has either failed to take reasonable steps to comply with the terms of the Consent Decree or has failed to make effective changes, which has resulted in ongoing pregnancy discrimination, including its unlawful termination of Ms. Hartin and substantial harm to her.

### V.  FACTS

5.1  AMR hired Ms. Hartin as a dispatcher at its Spokane, Washington, facility in February 2021.

5.2  Ms. Hartin's job was to take emergency calls from the public, triage and dispatch ambulances as appropriate, and coordinate services with medical providers. Ms. Hartin excelled at and enjoyed this work, due to her strong communication skills and work ethic.

5.3  Ms. Hartin's performance was so strong that AMR management encouraged her to apply for a "relief supervisor" position in early September 2021. The position involved interim supervisory responsibilities and would have placed Ms. Hartin on the path to a full-time supervisory role, which was her primary career goal. The promotion also would have provided Ms. Hartin a $2 per hour pay increase.

5.4  AMR received Ms. Hartin's application for the position of Associate Relief Dispatch Supervisor on or about September 2, 2021.

5.5  On or about September 9, 2021, Ms. Hartin informed AMR that she was pregnant.

5.6  Ms. Hartin wanted to and intended to continue working throughout

COMPLAINT - 5

ph222201

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

pregnancy.

5.7   Soon after learning she was pregnant, Ms. Hartin began to experience sickness and nausea.  Throughout September 2021, these symptoms worsened, and Ms. Hartin began to have periodic episodes of severe nausea, vomiting, headaches, and faintness.

5.8   From September 2021 and throughout the remainder of her pregnancy, Ms. Hartin had a "disability" as defined under RCW 49.60.040 and 42 U.S.C. § 12102.

5.9   Ms. Hartin continued to work at AMR.  However, sometimes her nausea and other symptoms made it difficult or impossible for Ms. Hartin to work, particularly during the latter part of her 12-hour shifts—when her symptoms worsened and she experienced vomiting, low blood sugar, or feelings of faintness. Her pregnancy-related illness was episodic and unpredictable, and at times, she was unable to report to her shift at all and called out absent.

5.10   In response to these symptoms, Ms. Hartin's doctor recommended that she limit her shifts to six or eight hours.  Her doctor also advised that she would sometimes have to miss work if her nausea or other symptoms flared up. Ms. Hartin communicated these recommendations from her doctor to AMR management and human resources personnel.

5.11  AMR Manager Jason Healey as well as AMR human resources personnel were on notice of Ms. Hartin's pregnancy and related complications. Ms. Hartin informed AMR of her complications and need for accommodations as soon as she began to experience nausea on or about September 9, 2021.

COMPLAINT - 6

ph222201

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

5.12   At first, AMR told Kodie to use accrued sick and vacation time (paid time off or "PTO") when she had to miss work due to pregnancy complications. But AMR soon told Ms. Hartin that she had no or little remaining PTO left to use and that she could be penalized for any pregnancy-related absences, and told her to apply for FMLA (Family Medical Leave Act) leave.

5.13   On September 21, 22, and 23, 2021, Ms. Hartin communicated with Manager Healey and/or AMR's human resources representatives and requested intermittent leave because of how sick she had been feeling, due to pregnancy. She applied for intermittent leave as an accommodation for her pregnancy-related illness, so that she could take job-protected time off of work as needed.

5.14   On September 23, 2021, Ms. Hartin took a call from AMR management to discuss her leave application during her lunch break, and the call went approximately several minutes beyond the official end of Ms. Hartin's break time.  AMR later cited this alleged policy infraction as a basis for disciplining and then firing Ms. Hartin.

5.15   On October 4, 2021, AMR manager Jason Healey received an email from Ms. Hartin containing medical documentation from her doctor explaining her pregnancy symptoms and resulting severe nausea and need for occasional relief from work to accommodate these symptoms.

5.16   Ms. Hartin submitted intermittent leave paperwork to AMR.  The form, completed by her doctor on September 22, 2021, stated that (i) Ms. Hartin was pregnant and due to have her baby in May 2022, (ii) experiencing complications, including "severe nausea" that is "intermittent/episodic," (iii) that

COMPLAINT - 7

ph222201

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

due to the condition it is "medically necessary" for her "to be absent from work on an intermittent basis (periodically)," and that (iv) episodes of incapacity were estimated to occur up to two times per week and are likely to last approximately 12 hours.

5.17   On October 8, 2021, AMR, by its agent Reed Group Leave Management Group, denied Ms. Hartin's application for leave—stating she was not eligible because she had not been employed for one year (a requirement under the federal leave law, the Family Medical Leave Act (FMLA)).

5.18   AMR did not inform Ms. Hartin of her rights under Washington's state leave law, the Paid Family Medical Leave Act (PFML)—which requires only 820 hours of employment with any employer(s) in Washington state over the last year, an eligibility criteria Ms. Hartin met.  Nor did AMR inform Ms. Hartin that her pregnancy-related absences could be excused as a pregnancy or disability accommodation, under Title VII, the Americans with Disabilities Act, the Washington Law Against Discrimination, or the Washington Healthy Starts Act.

5.19   Meanwhile, on October 11, 2021, AMR informed Ms. Hartin that she had not been selected for the position of Associate Relief Dispatch Supervisor (which she had applied for just before disclosing her pregnancy), and that instead, another individual who was not pregnant had been selected.  AMR made its hiring decision without interviewing Ms. Hartin.

5.20   Ms. Hartin called in to AMR per company policy when she had to miss work due to pregnancy symptoms, typically noting nausea and/or vomiting as the reasons she could not report to work.  Ms. Hartin explained to AMR's human

COMPLAINT - 8

ph222201

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1  resources and management personnel, including Jason Healey and others, that her absences were due to pregnancy-related illness.

5.21   In a letter dated October 13, 2021, Ms. Hartin's doctor documented that Ms. Hartin's pregnancy complications were the cause of partial and full-shift absences.  AMR received this letter.

5.22   AMR's management, and human resources personnel, received notice periodically throughout September and October 2021, that Ms. Hartin's pregnancy-related illness and need for accommodations continued.

5.23   Ms. Hartin communicated with AMR managers, supervisors, and HR personnel to provide up-to-date information on her health and ability to work or limitations on her ability to work.  She also continued to report to work when she could and performed her job well.

5.24   Ms. Hartin's symptoms worsened again in November 2021, including periodically experiencing heart palpitations, tachycardia, severe nausea, headaches, and weakness.  These symptoms caused Ms. Hartin to miss work on various days in November.  Ms. Hartin called out for each absence per AMR policy and typically notified AMR human resources personnel as well.

5.25   Ms. Hartin's health care provider filled out AMR's "Interactive Process Questionnaire" on November 11, 2021, and reiterated her medical recommendation that AMR limit Ms. Hartin's shifts to six hours, and explained that Ms. Hartin's severe nausea is intermittent and episodic and related to her pregnancy, when active substantially limits major life activities, and she may need intermittent leave throughout her pregnancy.

COMPLAINT - 9

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

ph222201

5.26   In approximately mid-November 2021, Ms. Hartin provided the completed "Interactive Process Questionnaire" to AMR and again requested that AMR approve her accommodation request.

5.27   AMR stated it would allow Ms. Hartin to work six-hour shifts as recommended by her doctor.  For several weeks, the shorter shifts worked well for Ms. Hartin.

5.28   Ms. Hartin was absent from work on November 24, December 2, and December 4, 2021, for pregnancy-related illness.  On each date, she called-out per AMR policy and stated that she was not able to work due to nausea and/or vomiting.  By this time, AMR had been aware for more than two months that those symptoms were related to her pregnancy.

5.29   On December 8, 2021, AMR fired Ms. Hartin.

5.30   AMR fired Ms. Hartin because she was absent from work.  Ms. Hartin was absent from work because of pregnancy-related illness.

5.31   At the time AMR fired Ms. Hartin, it handed her a letter titled "Notice of Termination of Employment," dated December 8, 2021. The letter stated that AMR was terminating Ms. Hartin for unspecified "attendance infractions." The letter quoted from several AMR policies, including one titled "Absenteeism and Tardiness" which states in part: "An employee's absence is unauthorized if the employee has not previously notified the company of their absence or if their request for absence has been denied or if the employee has no PTO left."  The termination letter was signed by AMR Manager Jason Healey, who also communicated the news to Ms. Hartin that she was fired.

COMPLAINT - 10

ph222201

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

5.32  AMR failed to accommodate Ms. Hartin's pregnancy and pregnancy-related conditions, beginning in September 2021.  AMR failed to accommodate Ms. Hartin's need for 6-hour shifts and need to call out when her symptoms became severe, despite the existence of reasonable and practical accommodations, for more than two months.  AMR also failed to accommodate Ms. Hartin when it fired her for pregnancy-related absences, and in doing so discriminated against her.

5.33   Meanwhile, AMR has a practice of regularly accommodating non-pregnant employees who have work restrictions similar to Ms. Hartin's.

5.34   AMR fired Ms. Hartin because of pregnancy-related absences, approximately two weeks before Christmas.  Ms. Hartin was emotionally devasted to lose a job she enjoyed and worked hard at, and depended on to support her family, because of her pregnancy and need for accommodation.

5.35   After AMR fired her, Ms. Hartin contested her termination.

5.36   AMR managers Jason Healey and Paul Priest met with Ms. Hartin on December 17, 2021.  During that meeting, AMR identified three specific absences as the basis for its decision to terminate her employment:  November 24, December 2, and December 4, 2021.  Ms. Hartin had notified AMR of those absences and the reasons for them.  AMR Communications Manager Jason Healey acknowledged that AMR terminated Ms. Hartin because of absences it knew were caused by her pregnancy-related illness.

5.37   Ms. Hartin sought reinstatement.

5.38   AMR reinstated Ms. Hartin's employment starting on January 10, 2022.

COMPLAINT - 11

ph222201

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

5.39  On January 19, 2022, Ms. Hartin transmitted an internal complaint to AMR's human resources department in which she reported that she believed AMR discriminated against her because she was pregnant or needed pregnancy accommodations, and also that she believed that AMR did not select her for promotion or interview her for the same reason.  AMR received Ms. Hartin's complaint but failed to reasonably investigate or take reasonable corrective action as required by the ongoing Consent Decree.

5.40  The rippling effects of AMR's decision not to accommodate Ms. Hartin and to fire her for pregnancy-related absences continued after her reinstatement and her internal complaint, as has its discriminatory (or retaliatory) practices.  For example:

    5.40.1  For the remainder of her pregnancy, Ms. Hartin feared the need to call-out for pregnancy-related absences.

    5.40.2  AMR terminated her benefits and retirement account upon the termination of her employment, which required Ms. Hartin to expend substantial effort and numerous hours to get those reinstated.

    5.40.3  AMR has repeatedly ignored or rejected Ms. Hartin's attempts to promote or take on additional job responsibilities that would further her career at AMR.  For example, Ms. Hartin has asked to become an AMR trainer.  In response, AMR said no on the basis that she was on a reduced work schedule—which she needed as a pregnancy accommodation.

    5.40.4  AMR has featured dispatchers hired after Ms. Hartin in its company newsletter but has never mentioned or featured Ms. Hartin

COMPLAINT - 12

ph222201

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1    despite her consistent good work performance.

2         5.40.5    Ms. Hartin also expressed interest to AMR in going
3    through a background check to qualify to do dispatch for AMR in
4    conjunction with a public county resource facility. While AMR helped other
5    dispatchers move forward to qualify, it did not help or communicate with
6    Ms. Hartin in response to her inquiry.

7         5.41  These events and those described above have caused Ms. Hartin
8    emotional anguish, humiliation, and distress, throughout a time in her life that
9    should be exciting and celebratory.

10        5.42  Ms. Hartin is currently employed at AMR. She plans to continue her
11    employment with the company and to continue to seek opportunities to advance
12    her career and for promotion. Ms. Hartin also plans to become pregnant again in
13    the future, while employed at AMR.

14        5.43  AMR engaged in the conduct alleged in this complaint despite
15    knowing that this conduct was discrimination on the basis of sex in violation of
16    federal law.

17        5.44  At all times relevant, AMR was already subject to a binding Consent
18    Decree, entered in this Court as a result of AMR's past pregnancy discrimination,
19    which stated expressly that AMR was "enjoined from engaging in practices that
20    constitute unlawful discrimination in violation of Title VII based on an employee's
21    pregnancy." AMR thus acted in knowing violation of federal law and in knowing
22    violation of an order of this Court.

23        5.45  The unlawful employment practices summarized above were done

COMPLAINT - 13

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

ph222201

with malice or with reckless indifference to the federally protected rights of Ms. Hartin, and in violation of the federal Consent Decree entered against AMR by this court which is ongoing.

5.46   In March 2022, Ms. Hartin filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC).

5.47   In response to Ms. Hartin's EEOC Charge, AMR told the federal agency that: Ms. Hartin did not have PTO (Paid Time Off) available to cover her absences; while Ms. Hartin wanted intermittent leave her only option was to take continuous unpaid leave from work; it fired Ms. Hartin for "unexcused" absences; and it denies any wrongdoing or that it violated the law.

5.48   AMR made the statements summarized above despite the fact that: it has been subject to a federal Consent Decree relating to pregnancy discrimination and accommodations in employment for more than a year; Ms. Hartin's legal rights do not hinge on or have any relation to whether she has PTO available; and the law requires employers to consider and provide intermittent leave, and discourages employers from forcing employees to take continuous leave (and stop working) during their pregnancies.

5.49   AMR's treatment of Ms. Hartin and its statements with respect to her legal claims underscore the need for continuing and additional injunctive relief, and for punitive damages to be awarded in this case.  Without additional injunctive relief, AMR's unlawful employment practices are likely to continue.

5.50   Ms. Hartin requested that the EEOC issue her a Right to Sue Notice, which the agency issued on June 23, 2022.

COMPLAINT - 14

ph222201

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

## VI. CLAIMS

6.1 Title VII of the Civil Rights Act of 1964: The facts described above constitute violations of Title VII, 42 U.S.C. § 2000e et. seq., as amended, and the Pregnancy Discrimination Act of 1978.

6.2 Americans With Disabilities Act: The facts above constitute violations of the ADA, 42 U.S.C. § 12101 *et. seq*.

6.3 Washington Law Against Discrimination: The facts described above constitute violations of the Washington Law Against Discrimination, RCW Chapter 49.60.

6.4 Washington Healthy Starts Act: The facts described above constitute violations of the Washington Healthy Starts Act, RCW 43.10.005.

6.5 Washington Paid Family and Medical Leave Act: The facts described above constitute violations of the Washington Paid Family and Medical Leave Act, RCW Chapter 50A.

## VII. DAMAGES

7.1 Defendant's violations of the state and federal law, as described above, proximately caused Plaintiff damages, including but not limited to emotional harm and economic damages. Defendants' violations of federal law also warrant an award of punitive damages. She seeks all damages and remedies available under the law.

## VIII. JURY DEMAND

8.1 Plaintiff requests a jury for all claims so triable.

COMPLAINT - 15

## IX. REQUEST FOR RELIEF

WHEREFORE, Plaintiff Kodie Hartin requests that the Court enter judgment and other relief against Defendant as follows:

9.1    General damages in an amount to be determined at trial.

9.2    Economic damages in an amount to be determined at trial.

9.3    Punitive damages in an amount to be determined at trial.

9.4    Liquidated damages in an amount to be determined at trial.

9.5    Reasonable attorney fees and costs as provided by 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 1988, RCW 49.60.030, RCW 43.10.005, RCW 50A.40.040 and other provisions of law.

9.6    Pre-judgment interest on any liquidated amounts.

9.7    Post-judgment interest on any amounts recovered from the time of judgment to the time of satisfaction of judgment.

9.8    An offset for the adverse tax consequences of the judgment.

9.9    Injunctive relief.

9.10    Declaratory relief.

9.11    The right to amend the complaint to conform to the proof offered at trial.

9.12    That such other relief as the Court may deem appropriate be granted.

//
//
//
//

COMPLAINT - 16

ph222201

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

DATED this 23rd day of August, 2022.

        MacDONALD HOAGUE & BAYLESS

By: */s/ Katherine C. Chamberlain*
Katherine C. Chamberlain, WSBA # 40014
katherinec@mhb.com
705 Second Avenue, Suite 1500
Seattle, WA 98104
206-622-1604

By: */s/ Nathaniel Flack*
Nathaniel Flack, WSBA #58582
nathanielf@mhb.com
705 Second Avenue, Suite 1500
Seattle, WA 98104
206-622-1604

*Attorneys for Plaintiff*

COMPLAINT - 17